UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
PETER CONIGLIO; MINXUAN QUI
a.k.a. MINXUAN QIU,

                     Plaintiffs,

    -against-

MERRICK GARLAND, in his official
capacity as Attorney General of the
United States; ALEJANDRO
MAYORKAS, in his official capacity as
Secretary of the Department of
Homeland Security; TRACY RENAUD,
in her official capacity as Acting
Director of United States Citizenship and
Immigration Services.

**MEMORANDUM AND ORDER**

Case No. 1:20-cv-1342-FB

*Appearances:*
*For the Plaintiffs*
THEODORE N. COX
325 Broadway
Suite 201
New York, NY 10007

*For the Defendants*:
JACQUELINE M. KASULIS
Acting United States Attorney
Eastern District of New York
By: PAULINA STAMATELOS
Assistant United States Attorney
271-A Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

    Plaintiffs Peter Coniglio, a United States citizen, and Minxuan Qiu, his

stepson,[1] allege that Defendant United States Citizenship and Immigration Services

---

[1] Plaintiffs advise the Court that "Minxuan Qui's" surname is properly spelled
"Qiu." The Court will refer to Qiu using the correct spelling but notes that the
administrative record uses the incorrect spelling.

(USCIS) unlawfully revoked its approval of a Form I-130 Petition for Alien

Relative ("the Form I-130" or "the Petition") which Coniglio had filed on Qiu's

behalf. Had USCIS not withdrawn its approval, Qiu would have been eligible to

apply for an immigrant visa and, eventually, a green card and citizenship.

Qiu and Coniglio state claims under the Administrative Procedure Act

(APA), Declaratory Judgment Act (DJA), and the Fifth Amendment of the United

States Constitution. All three causes of actions rely on their claims that USCIS (1)

revoked Qiu's classification as an "immediate relative" based upon an

impermissible construction of 8 U.S.C. § 1101(b)(1)(B) that excludes children who

turn 18 on the date of their parents' marriage; (2) failed to consider their argument

that Second Circuit and Board of Immigration Appeals (BIA) precedent mandate a

"lenient" construction of that statute; and (3) disobeyed a BIA remand order that

required consideration of their arguments. *See* 8 U.S.C. § 1101(b)(1)(B) (defining

"child" to include "an unmarried person under twenty-one years of age who is. . . a

stepchild, whether or not born out of wedlock, provided the child had not reached

the age of 18 years at the time the marriage creating the status of stepchild

occurred").

The Government moves to dismiss Qiu and Coniglio's claims for lack of

subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the

2

alternative, it asks the Court to enter summary judgment in their favor. The Government's motions are denied, and the Court, *sua sponte*, enters judgment in favor of Qiu and Coniglio.

## I.

Minxuan Qiu was born at 4:15 PM on October 7, 1996 in Chengdu, China. He and his mother, Tao Coniglio (née Min), are citizens of the People's Republic of China.

On October 7, 2014, Qiu's mother married his stepfather, Peter Coniglio. They were married in Brooklyn, New York, at approximately 11:25 AM, Eastern Daylight Time. Thus, the marriage occurred at 11:25 PM, China Standard Time.

On or about March 20, 2015, Coniglio filed a Form I-130 to classify Qiu as an "immediate relative." *See* 8 U.S.C. § 1151(b)(2)(A)(i) (defining "immediate relative" to include children); *see also* 8 U.S.C. § 1101(b)(1)(B) (defining "child" to include "a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred"). USCIS approved the petition in September of 2015 and forwarded it to the United States consulate in Guangzhou, China. *See* 8 U.S.C. § 1154(b) (if the Attorney General or, after 2002, the Secretary of Homeland Security "determines that the facts stated in the petition are true and that the [alien

3

beneficiary] is an immediate relative, . . . [he shall] approve the petition and forward one copy thereof to the Department of State").

The Guangzhou consulate received the petition sometime between September of 2015 and December of 2016 and scheduled a "personal interview" at some point during that period. After the interview, a consular official concluded that "the statements made by the beneficiary [Qiu] under oath during the personal interview with a consular officer constitute good and sufficient cause to conclude that the step-parent relationship between the beneficiary and petitioner [Coniglio] was not established before the beneficiary turned 18." A.R. 94.[2] The consulate therefore declined to issue an immigrant visa and "returned the. . . petition with a recommendation that it be reconsidered and [its approval] revoked." *Id.*

On April 10, 2018—almost two years after receiving the consulate's recommendation—USCIS issued a Notice of Intent to Revoke (NOIR) its approval of the petition. Qiu and Coniglio submitted a timely response to the notice, but USCIS failed to acknowledge their evidence and brief. *See* A.R. 62-79 (Coniglio's letter response dated May 7, 2018 and enclosed exhibits); *cf.* A.R. 80 ("Decision" letter dated June 6, 2018 from USCIS inaccurately stating that "[the] petitioner has failed to respond to our notice of intended revocation or to provide any additional

---

[2] The abbreviation "A.R." refers to the "Administrative Record."

evidence in support of the petition"). It therefore formally revoked its prior approval.

Coniglio appealed USCIS's decision to the BIA. Now represented by counsel, Qiu and Coniglio raised two issues on appeal. First, they argued that USCIS's strict interpretation of 8 U.S.C. § 1101(b)(1)(B) as requiring a marriage to occur before a beneficiary's eighteenth birthday was inconsistent with binding Second Circuit and BIA precedent. Second, they argued that USCIS erred as a matter of fact and law when it found that Qiu and Coniglio had failed to respond to the NOIR.

The BIA vacated USCIS's revocation and remanded the case for further proceedings. In its remand order, the BIA noted that "the petitioner has raised arguments on appeal" and emphasized Qiu and Coniglio's argument that, "under *Duarte-Ceri v. Holder*, the [Second Circuit] Court [of Appeals] rejected the notion that a child turned 18 at the stroke of midnight" and instead endorsed a lenient construction of the immigration law which "will. . .preserve a right or prevent a forfeiture." A.R. 23 (quoting 630 F.3d 83 (2d Cir. 2010)). It further stated that "the Director's decision does not address these arguments and incorrectly found that the petitioner did not respond to the NOIR." *Id.* It concluded that a remand was warranted to "provide the Director with an opportunity to consider the petitioner's response to the NOIR and the petitioner's arguments on appeal." *Id.*

On January 29, 2020, USCIS issued a second "Decision" letter to revoke

Qiu's status. A.R. 2-4 (full decision letter). The three page decision consists of (1)

a one-page review of the procedural history, (2) a paragraph listing the evidence

Qiu and Coniglio previously submitted, (3) a half page of verbatim quotations from

the Immigration and Nationality Act and its implementing regulations, (4) a

paragraph reiterating USCIS's position that Qiu and Coniglio's "step-relationship

is not valid for immigration purposes" because "[at] the time of the marriage, [Qiu]

was not under the age of 18 years," and (5) a required notice of Qiu and Coniglio's

right to appeal. *Id.* The document includes no discussion of Qiu and Coniglio's

legal arguments, although it does state that USCIS issued its NOIR "after a review

of the entire record." *Id.*

Because Qiu and Coniglio did not appeal this decision, it become final on

February 28, 2020. *Id.* (noting that USCIS decisions become final after 30 days).

This action followed.

## II.

### A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under

Rule 12(b)(1) when the district court lacks statutory or constitutional power to

adjudicate it." *Hui Fen Zhu v. McAleenan*, 501 F. Supp. 3d 139, 140 (E.D.N.Y.

2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The

plaintiff must show, by a preponderance of the evidence, that subject matter jurisdiction exists. *Id.* "In reviewing a 12(b)(1) motion to dismiss, the court must accept as true all material factual allegations in the complaint, but the court is not to draw inferences from the complaint favorable to [the party asserting jurisdiction]." *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex. rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). The Court may also refer to evidence outside the pleadings, including the administrative record. *Markarova*, 201 F.3d at 113.

"Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under. . . Rule 12(b)(1) and 12(b)(6), the . . . court must address the 12(b)(1) motion first." *Saleh v. Holder*, 84 F. Supp. 3d 135, 138 (E.D.N.Y. 2014) (internal citations omitted).

**B.    Rule 12(b)(6)**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## C.    Rule 56

On a motion for summary judgment, the Court must "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In an APA case, the Court relies on the administrative record for the material facts to determine if [an] agency's decision exceeds the agency's statutory authority or is arbitrary and capricious or an abuse of discretion." *Am. Steamship Owners Mut. Prot. and Indem. Ass'n., Inc. v.  United States*, 489 F. Supp. 3d 106, 128 (E.D.N.Y. 2020) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995)).

### III. Subject Matter Jurisdiction

Qiu and Coniglio argue that the APA, DJA, and 28 U.S.C. § 1331 (the "Federal Question Statute") permit the Court to review USCIS's decision to revoke its prior approval of the Petition. The Government does not dispute that the APA permits review of final agency action, nor does it contest Qiu and Coniglio's claim that USCIS's revocation decision was such an action. *See* Gov. Br. at 31 (arguing that the "[the] APA provides the exclusive means for asserting claims for

declaratory and injunctive relief from grievances caused by agency action with respect to regulatory measures of the sort at issue here"). Rather, the Government argues that USCIS's revocation decision was a discretionary act that 8 U.S.C. § 1252(a)(2)(B)(ii) shields from judicial review. In the alternative, the Government argues that the Doctrine of Consular Nonreviewability deprives the Court of jurisdiction.

The Second Circuit instructs that a court "determining whether a suit can be brought under the APA" must "begin with the strong presumption that Congress intends judicial review of administrative action." *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) (quoting *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670 (1986)). Although the Court is bound to enforce bars to jurisdiction, "the statutory limitations on judicial review of agency action should be interpreted narrowly in light of the APA's strong presumption in favor of judicial review." *Id.*

**A.   8 U.S.C. § 1252(a)(2)(B)(ii) Does Not Preclude Limited Judicial Review of Revocation Decisions Under 8 U.S.C. § 1155**

**1.   Revocation Under 8 U.S.C. § 1155 May Involve Non-Discretionary or "Purely Legal" Decisions**

With these principles in mind, the Court turns to the Government's claim that the Court lacks jurisdiction. The Government's argument arises at the intersection of two statutes: 8 U.S.C. § 1155 and 8 U.S.C. § 1252(a)(2)(B)(ii). The former provides that "[the] Secretary of Homeland Security may, at any time, for

what he deems to be good and sufficient cause, revoke the approval of any petition approved by him," while the latter precludes judicial review of "any. . . decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security." The Government contends that, when read together, §§ 1155 and 1252(a)(2)(B)(ii) establish that the Court lacks jurisdiction to consider the "quintessential[ly] discretionary decision" to revoke approval of a petitioner's application for an immigration benefit. Gov. Br. at 18 (quoting *Hui Fen Zhu*, 501 F. Supp. 3d at 141). *See also Polifet v. Cuccinelli*, 955 F.3d 377, 382-83 (4th Cir. 2020) (barring judicial review of USCIS decision to revoke prior approval of a Form I-130 and holding that § 1155 confers discretion on USCIS).

By invoking the discretionary language of 8 U.S.C. § 1155, the Government prevents the Court from establishing jurisdiction by straightforward application of the Second Circuit's holding in *Ruiz v. Mukasey*. 552 F.3d 269, 276 (2d Cir. 2009) (holding that "§ 1252(a)(2)(B)(ii). . . does not preclude judicial review of the *denial*"—as opposed to the revocation—"of [a petitioner's] I-130 petition"). (emphasis added). Indeed, the Court agrees with the Government that § 1252(a)(2)(B)(ii) precludes review of a wide range of decisions involved in the revocation of immigrant petitions, likely including decisions to initiate proceedings

and decisions regarding the weighing of evidence. *See Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978) ("Whether the [Immigration and Nationality Service] pursues [an investigation] further and, if so, whether it will institute proceedings to rescind [a petitioner's] status are matters solely within [its] discretion"). Such "substantive discretionary decisions" are clearly within § 1155's grant of discretion to the Secretary of Homeland Security to "revoke the approval of any petition approved" and decide "what he deems to be good and sufficient cause." 8 U.S.C. § 1155. *See also Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015) (noting that § 1252(a)(2)(B)(ii) "strips jurisdiction over a substantive discretionary decision").

However, the Second Circuit has long recognized that statutes which confer discretion sometimes impose nondiscretionary requirements, and that district courts retain jurisdiction to enforce compliance with those requirements. *See Mantena*, 809 F.3d at 728 ("Regardless of whether [a] substantive revocation decision is shielded from judicial review, no party has provided authority to suggest that the procedure surrounding the substantive decision is similarly shielded. We hold that it is not"). In fact, the Second Circuit has explicitly held that § 1155—the exact provision cited by the Government—incorporates a nondiscretionary notice requirement which can be judicially enforced despite § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision. *See Firstland Intern. Inc. v. U.S. I.N.S.*, 377 F.3d 127 (2d Cir. 2004). Considering these holdings, the Court

11

cannot dismiss this case simply because § 1155 gives the Government a measure of discretion. Instead, the Court must "seek to determine what decision [USCIS] made" and decide whether that decision was discretionary or "nondiscretionary, or purely legal." *Sharkey*, 541 F.3d at 85; *Sepulveda v. Gonzales*, 407 F.3d 59, 62 (2d Cir. 2005). Importantly, this inquiry does not ask "whether a decision was correct or a proper exercise of discretion." *Sharkey*, 541 F.3d at 85. Rather, it is an application of the "familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

**2.    Qiu and Coniglio's Challenges to Nondiscretionary and Purely Legal Aspects of the Government's Revocation Procedure are Reviewable**

In light of the foregoing, the Court must determine (1) what decision(s) USCIS made to effectuate the revocation of Qiu and Coniglio's petition; (2) whether those decisions were discretionary, "nondiscretionary or purely legal"; and (3) if the decisions are neither wholly discretionary nor wholly nondiscretionary, whether Qiu and Coniglio challenge nondiscretionary, "procedural" aspects of the decisions.

**a.    USCIS Made Nondiscretionary and Purely Legal Decisions**

As to the first, Second Circuit precedent recognizes that the adjudication of a claim may incorporate multiple "decisions," only some of which are nondiscretionary and therefore reviewable. *See Sepulveda*, 407 F.3d at 63-64 (emphasizing that "the [immigration judge] contrasted his [nondiscretionary]

12

finding of statutory ineligibility. . . with his discretionary finding that [the petitioner] lacked the good moral character required" and assuming jurisdiction to review the former determination); *Pizarro v. Holder*, 326 F. App'x 37, 40 (2d Cir. 2009) (acknowledging jurisdictionally significant distinction between a BIA decision to deny an application "because [the petitioner] was ineligible [for the desired status]" and a BIA decision to "deny [an] application for adjustment of status *in the exercise of* [the BIA's] *discretion*") (emphasis in original). To decide what the relevant "decisions" are, the Court looks to USCIS's written ruling. *Sepulveda*, 407 F.3d at 63-64. To determine whether a petitioner challenges the substance of that decision or the "procedure surrounding the substantive decision," the Court will "study the arguments asserted [in the petition]" and decide "regardless of the rhetoric in the petition, whether it merely quarrels over the correctness of factual findings or justification for the discretionary choices. . .or whether it raises a. . . 'question of law,' in which case the court could exercise discretion to review [that] particular issue." *Mantena*, 809 F.3d at 728; *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (defining scope of circuit court jurisdiction to review constitutional claims despite § 1252(a)(2)(B)(ii)'s jurisdictional bar).[3]

---

[3] Although *Xiao Ji Chen* interprets § 1252(a)(2)(D)'s exception for appellate—not trial court—jurisdiction, the Court believes that case's exegesis of the phrase

The substance of the "decision" at the heart of this case appears on Page 3 of the Administrative Record. It reads, in relevant part:

> On November 5, 2019, USCIS received your response to the Notice of Intent to Revoke. You submitted no new evidence to establish that the step-relationship was created before [Qiu] reached the age of 18. The record shows that [Qiu] was born on October 7, 1996. The marriage that created the step-relationship occurred on October 7, 2014. At the time of the marriage, the beneficiary was not under the age of 18 years. The step-relationship is [therefore] not valid for immigration purposes.

A close reading of this paragraph reveals that it contains at least three separate "decisions." First, it finds that Qiu was born on October 7, 1996, and the marriage occurred on October 7, 2014. Second, it determines, based upon these facts, that Qiu had "was not under the age of 18 years" at the time of the marriage. Third, it concludes that, because Qiu had "reached the age of 18. . . [the] step-relationship is not valid for immigration purposes."

The first "decision"—the factual one—indisputably falls outside of the scope of the Court's review. *Cf. Xiao Ji Chen*, 471 F.3d at 329. The Court could not, for example, entertain an argument that revocation was improper based upon allegations that Qiu was born on November 6, 1997. By contrast, the second

---

"question of law" applies in principle to the phrase "purely legal" as used in *Sepulveda*. *Compare Xiao Ji Chen*, 471 F.3d at 329 *with Sepulveda*, 407 F.3d at 63. In any event, common sense dictates that careful "study [of] the arguments asserted" is a valid way to ascertain whether a petitioner challenges a "purely legal" decision. *Xiao Ji Chen*, 471 F.3d at 329.

"decision"—that Qiu "was not under the age of 18 years"—implicates a question of law. Second Circuit and BIA precedent suggest that a petitioner's age is a mixed question of fact and law, *provided that the petitioner's age is dispositive of his entitlement to a statutory benefit. See e.g.*, *Duarte-Ceri*, 630 F.3d at 88, 91 (applying the Rule of Lenity to statutory age requirements and deciding "on assumed facts" that a petitioner was "under the age of 18" for purposes of entitlement to a statutory benefit); *Matter of L-M and C-Y-C*, 4 I&N Dec. 617 (B.I.A. 1952) (applying Rule of Lenity and holding that immigrant petitioners were "under 16" as a matter of law); *see also Joaquin-Porras v. Gonzales*, 435 F.3d 172, 178 (2d Cir. 2006) (noting that "interpretation of [a] one-year deadline . . . is a question of law"). Put another way, precedent suggests that determining someone's age for purposes of statutory entitlements is a two-step process. First, the Court or agency assesses the question of "biological fact." *Duarte-Ceri*, 630 F.3d at 88. Second, the decisionmaker applies the statute which contains the age requirement or bar, a process that requires him to interpret the statute and apply any relevant interpretive canons, like the Rule of Lenity. *See id.* (applying the Rule of Lenity to choose between "two plausible readings" of a statutory bar based upon age).[4] The

---

[4] It is jurisdictionally irrelevant that *Duarte-Ceri* and *Matter of L-M and C-Y-C* involved claims of entitlement to citizenship rather than to classification as an immediate relative. These cases are cited above not for their substantive holdings, but rather as models of an analytical process.

second step is a "purely legal" act of statutory interpretation that is subject to judicial review. *See Cuthill v. Blinken*, 990 F.3d 272, 279 (2d Cir. 2021) (explaining, in immigration case, that "[the] term 'age' standing in isolation normally means biological age. But the word 'age' in the [Child Status Protection Act] does not exist in a vacuum. Rather, it is part of an interlocking set of statutory provisions"); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (a "district court's interpretation of a statute [is] a pure question of law"); *see also Richards v. Napolitano*, 642 F. Supp. 2d 118, 123 (E.D.N.Y. 2009) (holding that the meaning of the terms "immediate relative and spouse as they appear in the [INA]" is a "purely legal question").

Finally, USCIS's "decision" that Qiu and Coniglio's "step-relationship is not valid for immigration purposes" is also reviewable. USCIS's analysis makes clear its view that the "validity" of Qiu and Coniglio's relationship for immigration purposes hinges on the question of whether Qiu had "reached the age of 18" at the time of his mother's marriage. *See* A.R. 3. Because the underlying facts are undisputed (and, in any event, unreviewable), the question of Qiu's age is functionally "purely legal." As such, both it and the validity determination that flows from it can be decided based upon "meaningful standards" embodied in statutory rules and circuit precedents (like *Duarte-Ceri*) *without* the need for USCIS to exercise discretion. *Cuthill*, 990 F.3d at 279 (age determination requires

16

interpretation of "interlocking statutory provisions"); *cf. Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) ("An administrative action is committed to agency discretion where the governing law is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

Put another way, because the validity of Qiu's step relationship hinges on the determinate, nondiscretionary, and legal question of his age, USCIS's evaluation of that relationship is a "nondiscretionary decision regarding an alien's eligibility" for an immigration benefit analogous to the nondiscretionary, legal determination that an alien "made a fraudulent or willful misrepresentation" or "lacked good moral character." *Sepulveda*, 407 F.3d at 63-64 (court had jurisdiction to review holding that an alien "could not establish good moral character as a matter of law"); *Chen v. Coven*, 672 F. App'x 136, 137 (2d Cir. 2017) (court had jurisdiction to review THE legal conclusion that an alien "made a fraudulent or willful misrepresentation"). Like those determinations, the determination of Qiu's age requires USCIS to apply law to facts and arrive at a legally correct result, not to exercise its discretion or weigh statutory or judicially created factors.

**b.**     **Qiu and Coniglio's Claims Challenge Nondiscretionary Aspects of USCIS's Procedures**

The nature of Qiu and Coniglio's claims strengthens the Court's conviction that USCIS's actions are subject to judicial review. *Xiao Ji Chen*, 471 F.3d at 329. As previously explained, Qiu and Coniglio challenge (1) USCIS's construction of a statute, 8 U.S.C. § 1101(b)(1)(B); (2) its alleged failure to follow circuit and BIA precedent; and (3) its alleged noncompliance with a BIA remand order.

The first of these arguments is a statutory construction argument. As such, it raises a "purely legal" question over which the Court has jurisdiction. *AECOM Tech. Corp.*, 762 F.3d at 218; *Richards*, 642 F. Supp. 2d at 123.

The second alleges that USCIS failed to follow binding agency and circuit precedent. It is well settled that an agency may be reversed for failing to follow its own precedent unless it provides a rational explanation. *See, e.g.*, *Aris v. Mukasey*, 517 F.3d 595, 600 (2d Cir. 2008); *Johnson v. Ashcroft*, 378 F.3d 164, 171-72 (2d Cir. 2004). Likewise, agencies are bound to follow circuit precedent, and their failure to do so may result in invalidation of agency action and the issuance of injunctions. *See, e.g.*, *Reich v. Contractors Welding of Western N.Y., Inc.*, 996 F.2d 1409, 1413 (2d Cir. 1993) (emphasizing that "[the] fact that the [Department of Labor's Occupational Safety and Health Review] Commission has nationwide jurisdiction does not free it from the confines of Second Circuit precedent" and emphasizing that an agency can be reversed for "fail[ing] to give adequate weight to. . . precedent"); *Stieberger v. Bowen*, 801 F.2d 29, 35-3 (2d Cir. 1986)

18

("Whether and to what extent adherence to the standards of relevant circuit law may be enforced by placing administrative adjudicators under an injunction is a serious issue. . . . We are not prepared to say [such] an injunction is beyond the equitable power of a district court"). The "decision" to follow relevant circuit precedent is not discretionary.

Finally, the claim that USCIS fails to comply with the BIA remand order amounts to a claim that the agency did not follow its own regulations. *See* 8 C.F.R. 1003.1(g) (2021) ("Except as [BIA] decisions may be modified or overruled. . . decisions of the [BIA]. . . are binding on all officers and employees of DHS"). "Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. Of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir 2020) (internal citations omitted). "When agencies fail to do so, the APA (as developed by case law) gives aggrieved parties a cause of action to enforce compliance." *Id.* (internal citations omitted).

For all these reasons, the Court holds that 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdictional bar does not preclude judicial review of Qiu and Coniglio's claims.

**B.    The Doctrine of Consular Nonreviewability Limits the Relief Available But Does Not Deprive the Court of Jurisdiction**

**1.    Consular Nonreviewability Generally**

The Government next argues that the Doctrine of Consular Nonreviewability prevents review of Qiu and Coniglio's claims. The Doctrine of Consular Nonreviewability (occasionally, "the Doctrine") is "the principle that a consular officer's decision to deny a visa is immune from judicial review." *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009); *see also Hsieh*, 569 F.2d at 1181 ("It is settled that the judiciary will not interfere in the visa-issuing process"). The Second Circuit has refused to apply the Doctrine when a petitioner raises claims under the First Amendment, implying that there is an exception for at least some constitutional claims. *Am. Acad. of Religion*, 573 F.3d at 123-25. But otherwise, the Doctrine's reach is broad and precludes review of factual and legal errors. *See London v. Phelps*, 22 F.2d 288, 290 (2d Cir. 1927) ("Whether the consul has acted reasonably or unreasonably is not for us to determine. Unjustifiable refusal to vise a passport. . . is beyond the jurisdiction of the court"); *see also Salem v. Mukasey*, 683 F. Supp. 2d 289, 290 (W.D.N.Y. 2010) (non-reviewability of visa determination precludes issuance of writ of mandamus to compel reconsideration of consular decision); *Yu Chu Hom v. Goldbeck*, No. 08-CV-3159 (SLT), 2010 WL 2265054, at *2 (E.D.N.Y. May 28, 2010) (claim that consular official's visa denial was "clearly erroneous" is unreviewable); *but see Fiallo v. Levi*, 406 F. Supp. 162, 165 (E.D.N.Y. 1975) ("We will not extend

20

consular nonreviewablility, insofar as the rule has been recognized, beyond the actual grant or denial of a visa").

Finally, several district courts have held that the Doctrine also precludes consideration of petitions which try "to circumvent the precedent of consular nonreviewability by arguing that they do not seek review of consular decisions, but rather the bases for the decisions." *Dong v. Ridge*, No. 02-Civ. 7178(HB), 2005 WL 1994090, at *3 (S.D.N.Y. Aug. 18, 2005); *see also Grullon v. Kissinger*, 417 F. Supp. 337 (E.D.N.Y. 1976); *Al Makaaseb Gen. Trading Co. v. Christopher*, No. 94 Civ. 1179, 1995 WL 110117, at *1 (S.D.N.Y. Mar. 13, 1995). These decisions are nonbinding, non-precedential, and not particularly recent, so the Court need consider them only if their analyses are persuasive. Nonetheless, the Court acknowledges that some of its sister courts consider whether a petitioner's arguments attempt to "circumvent the precedent of consular nonreviewability."

## 2.    Qiu and Coniglio Do Not Challenge Consular Decisions Directly or As Reframed

A review of Qiu and Coniglio's complaint shows that it does not directly challenge a consular officer's decision. The Secretary of State is not a party to this action, and only USCIS's interpretation of statutes and compliance with procedure is under scrutiny. Nonetheless, the Government contends that the Doctrine applies because "USCIS. . .revoked Plaintiffs' application on the same grounds as the

consular decision." Gov. Br. at 20. Thus, it asserts that Qiu and Coniglio's claims are a "reframed" challenge to a consular decision like the ones rejected in *Dong*, *Grullon* and *Al Makaaseb*.

This argument is unpersuasive for two reasons. First, an agency decision to rule based upon another agency's interpretation is still a "decision" subject to judicial review. *See, e.g.*, *Cuthill*, 990 F.3d at 285-86 (declining to give deference to a BIA decision "in which the BIA adopted the same interpretation as the Department of State"). *See also* A.R. 22 (acknowledging, in BIA remand order, that USCIS's revocation of Qiu and Coniglio's I-130 is a "decision"). USCIS is free to align its interpretation of the immigration law with its colleagues in Foggy Bottom; however, its choice to do so in no way exempts it from judicial review. If anything, the Second Circuit has implied that an agency's decision to adopt another agency's interpretation uncritically should be subject to more scrutiny, not less. *Cuthill*, 990 F.3d at 285-86 (expressing doubt that, but declining to decide whether, *Chevron* deference applies when the BIA adopts the State Department's reading of a regulation).

Second, the Supreme Court recognizes that the Department of State (DoS) and the Department Homeland Security (DHS), which houses USCIS, play discrete and legally distinct roles in the process of approving immediate relative petitions and issuing visas to beneficiaries like Qiu. *See Scialabba v. Cuellar de Osorio*, 573

U.S. 41, 46-50 (2014) (describing the visa issuance process). Using its authority under 8 U.S.C. § 1154, DHS performs the initial work in the process, first determining whether a "necessary familial relationship" exists, and then "approving [the petition] if it is found to meet all requirements." *Id.* at 47; 8 U.S.C. § 1154(a) (setting out petition procedure for immediate relatives). USCIS's approval documents its finding that "a necessary familial relationship exists," and thus that the petitioner is eligible *to apply* for a visa. *See* U.S Citizenship and Immigration Services, "I-130, Petition for Alien Relative," https://www.uscis.gov/i-130 (last accessed Aug. 7, 2021). This is a very modest benefit. For a beneficiary like Qui, USCIS's "approval results not in getting a visa then and there," but simply in a determination that the beneficiary may proceed with the visa application process. *Id.*; *see also* U.S. Dep't of State, "Immigrant Visa Process," https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html (last accessed Aug 7, 2021) (showing USCIS approval as the first step of a ten-step process).

If USCIS approves the petition, it is sent to the relevant consulate for processing with DoS. The beneficiary then files a second application with the consulate, submits additional documentation, pays a fee, and attends a consular interview. *Id.* Once all this is done, DoS uses its authority under 8 U.S.C. § 1201 to

makes its own determination regarding the beneficiary's eligibility for a visa. *Id.*; 8 U.S.C. § 1201-02 (governing issuance of visas). Importantly, the plain language of 8 U.S.C. § 1201 confers discretion on consular officials to issue or decline to issue a visa. 8 U.S.C. § 1201(a) ("Under conditions hereinafter described, a consular officer *may* issue. . . a visa [which] shall specify. . . the preference [and] immediate relative status"). Consequently, *this decision* is exempt from judicial scrutiny under the Doctrine. *Phelps*, 22 F.2d at 290.

In light of the preceding analysis, the Court holds that USCIS's decision to approve and forward a petition is legally distinct from a consulate's decision to vise a passport, and that the Doctrine of Consular Nonreviewability shields only the latter decision from judicial review. The two processes—USCIS petition approval and consular visa issuance—are authorized by different statutory subsections and accomplished by personnel attached to distinct agencies that are not even housed in the same Executive department. *Compare* 8 U.S.C. § 1154 *with* 8 U.S.C. § 1201. As illustrated in the Administrative Record, the employees of those agencies appear to acknowledge their separate jurisdictions and discrete functions.[5] Thus, while a consular official's "[u]njustifiable refusal to vise a

---

[5] For instance, the consulate's memorandum to USCIS "recommend[ed]" that USCIS revoke its prior approval; it did not purport to compel USCIS to revoke its approval based on the consulate's analysis. A.R. 94. Likewise, USCIS did not behave as if it were bound by the consulate's determination by, for example,

passport. . . is beyond the jurisdiction of the court," USCIS's independent decision to permit a visa application to move forward is not. *Cf. Phelps*, 22 F.2d at 290; *see also Fiallo*, 406 F. Supp. at 165 (consular nonreviewability does "not extend. . .beyond the actual grant or denial of a visa").

Notwithstanding the Government's arguments, this conclusion is consistent with the holdings of *Dong*, *Grullon* and *Al Makaaseb*. Read together, those cases stand for two principles. First, a Court may not effectively "direct the issuance of a visa" by way of a "preliminary declaration of [a petitioner's] immigrant status." *Dong*, 2005 WL 1994090, at *3 (citing *Grullon*, 417 F. Supp. at 339). Second, a Court may not "make an end run around" a consul's decision by "challenging its foundation," because judicial "scrutiny of the predicate for the [consular] decision necessarily causes the court to interfere with the process of the decision which it has been precluded from reviewing." *Al Makaaseb*, 1995 WL 110117, at *3 (holding that the Court lacked jurisdiction to direct issuance of a visa based on the plaintiff's improper inclusion on a DoS issued "lookout list"). The first of these

---

advising Qiu and Coniglio that the consulate's denial terminated their petition as a matter of law. *Cf.* A.R. 2-4. Instead, it launched its own quasi-judicial administrative process that culminated in a formal, reviewable decision containing independent (albeit limited) analysis. *Id.* The BIA acknowledged as much when it reviewed that decision to determine whether USCIS—not DoS or the Guangzhou consulate—had shown "good and sufficient cause to revoke a previously approved petition." A.R. 22

principles is inapplicable because the Court is not required to "declare" Qiu's immigration status in order to grant him relief. Although Qiu does request a declaration that Qiu is a "child" under 8 U.S.C. § 1101(b)(1)(B), the complaint seeks alternative relief in the form of an order setting aside USCIS's interpretation of a statutory term and remanding this case to allow USCIS to consider Qiu and Coniglio's legal arguments. Compl. at 37. Moreover, it is unclear that "child" is an immigration status, given that the term "immigration status" usually refers to a "status" that confers a right to reside in this country, like Lawful Permanent Resident status. *Cf.* U.S Citizenship and Immigration Services, "I-130, Petition for Alien Relative," https://www.uscis.gov/i-130 (last accessed Aug. 7, 2021) ("the filing or approval of a [Form I-130] petition does not give your relative any immigration status"). The Court holds that it can provide relief without making a "declaration" of Qiu's immigration status.

Likewise, the Court can rule in this case without "scrutin[izing] the predicate" of a consular decision. *Cf. Al Makaaseb*, 1995 WL 110117, at *3. As explained above, it is DHS's—not the consulate's—decision which is under review. A ruling for Qiu and Coniglio would have no binding effect on DoS, which remains free to refuse Coniglio a visa on any basis whatsoever, including one inconsistent with the terms of this Order. *See Dong*, 2005 WL 1994090, at *5 (holding that a consul's action "[w]hile reprehensible. . . cannot be a basis for

26

judicial review"). However, USCIS officials are not consular officials, and the Court is deeply "reluctan[t] to insulate entirely the actions of any public official from judicial scrutiny." *Fiallo*, 406 F. Supp. at 165. The predicates of USCIS's decision to revoke Qiu and Coniglio's petition are therefore subject to judicial scrutiny.

In light of the foregoing, the Court holds that the Doctrine of Consular Nonreviewability does not divest it of jurisdiction to hear this case. However, consistent with *Dong*, *Grullon* and *Al Makaaseb*, it acknowledges that the Doctrine may limit the scope of relief it can provide by depriving it of the power to compel the Guangzhou consulate to recognize Qiu's status as a "child" for purposes of the INA.[6] *See* Compl. at 37 (requesting that the Court "declare. . .Qiu to be a 'child'

---

[6] Because the Complaint does not ask the Court to reverse a consular decision or compel action by DoS, the Court need not decide the thorny question of whether the Doctrine of Consular Nonreviewablility permits consulates to disregard a court's interpretation of a statute. *Cf. Chevron, U.S.A., Inc. v. Nat. Resources Def. Council*, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction"). Without venturing an answer, the Court notes that the source of the interpretation (e.g., district, circuit or Supreme Court) may be relevant, and that an interpretation's status as "law of the case" for a given applicant might also be considered. *See, e.g.*, *Matter of Jauregui*, 15 I&N. Dec. 485 (BIA 1975) (applying "law of the case" doctrine in immigration proceeding). The Court further notes that the question of whether a consulate *must comply* with a judicial interpretation is analytically distinct from the question of whether the Court *may enforce compliance* with its interpretation. Because some courts hold that the Doctrine permits consulates to deny visas based on manifest error, it may be that consulates are required to follow judicial interpretations of statutes, but that

for purposes of the INA"). This limitation does not prevent the Court from setting aside USCIS's decision and its interpretation of the INA if either is found to be arbitrary, capricious or contrary to law. *See* 5 U.S.C. § 706. Likewise, the Doctrine does not bar entry of a declaratory judgment that Qiu qualifies as a "child for purposes of the INA" since "declaratory relief is proper" whenever "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971). Regardless of whether DoS can be compelled to follow the Court's judgment, "a declaratory judgment would alleviate the uncertainty over the legality of USCIS's actions and conclusions." *Richards*, 642 F. Supp. 2d at 133 (declaring that alien qualified as an "immediate relative" under the INA). As a practical matter, entry of a reasoned declaratory judgment in Qiu's favor may persuade consular officials that they erred, thereby enhancing Qiu's chances of obtaining a visa. It would also serve the "useful purpose" of reinforcing that the judiciary—not DoS—is "the final authority on issues of statutory construction." *Chevron, U.S.A., Inc. v. Nat. Resources Def. Council*, 467 U.S. 837, 843 n.9 (1984).

---

paradoxically, no court may reverse them when they shirk their obligations. *Cf. e.g.*, *Phelps*, 22 F.2d at 290; *Yu Chu Hom*, 2010 WL 2265054, at *2.

**IV. Merits**

As previously stated, Qiu and Coniglio present three theories of relief. First, they contend that USCIS's revocation is "not in accordance with law" because its "application of [8 U.S.C. § 1101(b)(1)(B)] is based on an impermissible construction of the statute which is not in accordance with the law of the agency and the circuit," specifically *Duarte-Ceri* and *Matter of L-M and C-Y-C*. Compl. at 15 (citing 630 F.3d at 83 and 4 I&N Dec. at 617). Second, they argue that the decision was arbitrary and capricious because "USCIS did not acknowledge the statutory arguments made by Plaintiffs, much less consider them or provide any analysis as instructed by the BIA." Compl. at 11. Finally, they contend that USCIS's failure to explain its decision or comply with the BIA's remand order deprived them of an opportunity to be "heard in a meaningful manner" and thus, of due process. *Id.* at 36. Because the Court grants Qiu and Coniglio all relief sought on their APA claims, it does not reach their due process theory.

Qiu and Coniglio's theories implicate two burdens of proof. The plaintiff bears the burden of establishing that agency action is arbitrary, capricious or otherwise unlawful. *Miezgiel v. Holder*, 33 F. Supp. 3d 184, 189 (E.D.N.Y. 2014); *see also Sierra Club v. U.S. Army Corps of Engineers*, 712 F.2d 1043, 1051 (2d Cir. 1985) (absent argument from a plaintiff, agency action is "presumed to be valid"). However, "where [US]CIS reverses course, and denies a visa to an

29

applicant based on the same factual record on which it had previously granted a visa, the agency has a burden to justify its change of position." *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 542 (S.D.N.Y. 2012) (citing *Glara Fashion, Inc. v. Holder*, No. 11 Civ. 889, 2012 WL 352309, at *7 (S.D.N.Y. Feb. 3, 2012)). The Court harmonizes these superficially conflicting burdens by holding that Qiu and Coniglio have the burden on their first theory, since USCIS's interpretation of its governing statute is "presumptively valid." *Sierra Club*, 712 F.2d at 1051; *see generally Chevron*, 467 U.S. at 843 ("if [a] statute is silent with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). However, the Government has the burden to refute their second theory because it amounts to a claim that USCIS has not met its burden to "justify its change in position" with respect to Qiu and Coniglio's petition.[7] *Noroozi*, 905 F. Supp. 2d at 542.

1. **USCIS's Construction of 8 U.S.C. § 1101(b)(1)(B) Is "Not In Accordance With Law"**

---

[7] The Government argues that Qiu and Coniglio must also bear the burden on their second claim for relief because "Plaintiffs bear the burden of establishing that [a] beneficiary qualifies for [a] benefit sought under the immigration laws." Gov. Br. at 24 (citing *Matter of Ho*, 19 I&N Dec. 582, 582-83 (BIA 1988)). But Qiu and Coniglio are not applying for a benefit in the first instance. Rather, the Government concedes—and in fact emphasizes—that Qiu and Coniglio challenge USCIS's revocation of a petition it previously approved. *Cf. id.* at 19 (arguing, elsewhere in the Government's Brief, that "USCIS applied its discretion *to revoke* the I-130 Petition") (emphasis added). It is therefore incumbent on the Government to justify USCIS's change in position.

Qiu and Coniglio's principal argument is that USCIS erred by failing to apply the holdings and reasoning of *Duarte-Ceri* and *Matter of L-M and C-Y-C*. 630 F.3d at 83; 4 I&N. Dec. at 617. Both cases addressed ambiguous temporal language in citizenship statutes and their application to petitioners born on the same day as a key event. *Duarte-Ceri* interpreted the phrase "under the age of eighteen years," as it appeared in former 8 U.S.C. § 1432(a), which listed the conditions required for the alien child of a U.S. citizen to derive citizenship. 630 F.3d at 87 (citing 8 U.S.C. § 1432 (repealed 2000)). *Matter of L-M and C-Y-C* interpreted the phrase "by the time he reaches the age of sixteen years," as it appeared in former INA § 201, which governed revocation of derived citizenship. 4 I&N. Dec. at 618 (citing former INA § 201(g) (1940)). Both courts ruled for petitioners, holding that a petitioner should not lose citizenship or the chance to obtain it based upon ambiguity. *Duarte-Ceri*, 630 F.3d at 88; *Matter of L-M and C-Y-C*, 4 I&N Dec. at 622.

Qiu and Coniglio contend that *Duarte-Ceri* and *Matter of L-M and C-Y-C* endorsed a rule of "lenient construction" which USCIS was required to observe when interpreting the phrase, "had not reached the age of eighteen years at the time [of] the marriage," in 8 U.S.C. § 1101(b)(1)(B). They argue that USCIS acted unlawfully by failing to apply this rule, and that application of the rule results in a

finding that Qiu "had not reached the age of eighteen years" at the time of his mother's marriage.

### a.   Precedent, Legislative Intent, and Unlawful Agency Action

The APA requires the Court to "hold unlawful and set aside agency action that is arbitrary, capricious. . . or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A court assessing the lawfulness of agency action "is not limited to determining whether an agency's decision was reasonable in light of the law as it existed at the time of the decision; instead, the APA requires a court to determine whether a decision is in 'accordance with the law' as it exists at the time of review." *New York v. U.S. Dep't of Health and Hum. Servs.*, 414 F. Supp. 3d 475, 535 (S.D.N.Y. 2019) (quoting *Georgetown Univ. Hosp. v. Bowen*, 698 F. Supp. 290, 297 (D.D.C. 1987), *aff'd,* 862 F.2d 323 (D.C. Cir. 1988)).

In light of binding Second Circuit law requiring agencies to adhere to circuit precedent, the Court construes the phrase "law as it exists at the time of review" to encompass relevant circuit court decisions that construct or interpret statutory terms. *Id.* at 536 (citing Second Circuit law interpreting statutes as part of inquiry into agency compliance with law); *see also Contractors Welding of Western N.Y., Inc.*, 996 F.2d at 1413 (mandating agency compliance with circuit precedent); *Stieberger*, 801 F.2d at 35-6 (same). Put another way, because circuit courts are the final authorities on statutory construction or interpretation issues on which the

Supreme Court has not spoken, they may say definitively what the governing statute "means" and what the import, if any, of its legislative history is. *Chevron*, 467 U.S. at 843 n.9 (judiciary is final authority on statutory interpretation); *see also Chisholm v. Defense Logistics Agency*, 656 F.2d 42, 47 (3d Cir. 1981) ("[W]hen an administrative agency acts as a quasi-judicial body, it fulfills the same function as a court, [i.e.] seeking to make a determination which is consistent with the public interest as reflected in the governing statute"). Accordingly, an agency is required to apply circuit precedent that speaks directly to the provision it interprets and is also prohibited from interpreting a statute inconsistently with circuit precedent that speaks to the interpretation, construction or "purpose" of a broader statutory scheme. *Id.*

The requirement that agencies accept circuit courts' interpretations of statutes and make determinations "consistent with the public interest as reflected in the governing statute" is not in tension with the *Chevron* deference rule. As the Second Circuit reaffirmed in *Cuthill*, *Chevron* deference does not apply where "the intent of Congress is clear." *Cuthill*, 990 F.3d at 286 (citing *Chevron*, 467 U.S. at 842). Where a geographically relevant circuit court has spoken conclusively to the purpose or congressional intent behind a statutory provision or scheme, an agency must apply the circuit court's statement of clear congressional intent. *Id.*

b.     **USCIS Failed to Give Effect to "Clear Congressional Intent" As Revealed Through Binding Circuit Precedent**

Qiu and Coniglio do not and cannot argue that a mechanical application of *Duarte-Ceri* and *Matter of L-M and C-Y-C* secures the result they seek. On the contrary, they acknowledge that both cases arise "in the context of citizenship," and that those cases did not interpret the phrase "had not reached the age of eighteen years," in 8 U.S.C. § 1101(b)(1)(B). *See* Compl. at 17. Nonetheless, they argue that "because [8 U.S.C. § 1101(b)(1)(B)] contains nearly identical language to the various citizenship statutes interpreted in *Duarte*, the. . . princip[les] of statutory construction [relied upon in *Duarte*] apply with equal force in the present matter." *Id.* at 21 The Court agrees.

As previously explained, in *Duarte-Ceri*, the Second Circuit interpreted the phrase "under the age of eighteen years" in a statute governing derivative citizenship. 630 F.2d at 87. The Circuit held that the phrase was "ambiguous" because it was "susceptible to more than one meaning" and could refer either "to an applicant who has not yet reached the eighteenth anniversary of his birth" or to one who "had not yet lived in the world for eighteen years." *Id.* at 88. Faced with this ambiguity, the Court did not attempt a scientific determination of "biological fact," nor did it give pride of place to "everyday language." *Id.* at 88-9. Rather, it embraced the principle that "whenever it becomes important to the ends of justice, . . . the law will look into fractions of the day" and immigration law's

"longstanding presumption to construe any lingering ambiguities in favor of the petitioner" to hold that a child remained "under the age of eighteen" for the entirety of his birthday. *Id.*

Importantly for this Court's purposes, the Second Circuit emphasized that its holding "implements the underlying intention of our immigration laws [including the INA] regarding the preservation of the family unit," and that "it is consistent with Congress's remedial purposes. . . to interpret the [1952 Revised INA's] ambiguity with leniency, and we should interpret the statute here in a manner that will keep families intact." *Id.* at 90 (quoting H.R. Rep. No. 82-1365, at *1680 (1952)). The Second Circuit went on to hold that Congress's choice to use ambiguous language was an intentionally extended invitation for the courts to impose lenity, explaining that it "cannot simply dismiss the difference in language" between the phrase "under the age of eighteen years" and a series of "unambiguous age-related phras[es] elsewhere in the INA," including "before the child attains his eighteenth birthday,. . .prior to the child's eighteenth birthday, . . .no later than [one's] twenty-fifth birthday. . .[and] person who has not attained his eighteenth birthday." *Id.* at 90 (difference between various phrases was not "inadvertent or immaterial"); *see also Nat'l Fed. of Indep. Businesses v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress

acts intentionally"). In so holding, the Second Circuit clearly established that ambiguity in the INA should be construed to favor petitioners' rights and provided several examples to help courts and agencies determine when the INA's language is ambiguous. *Duarte-Ceri*, 630 F.2d at 90.

Like the phrase "under the age of eighteen years," the phrase we interpret ("had not reached the age of eighteen years") is also ambiguous. *Id.* at 88; 8 U.S.C. § 1101(b)(1)(B). The Government's contention that "there is nothing ambiguous about the [phrase]" is conclusory, unpersuasive, and contrary to dicta in *Duarte-Ceri*. *Cf.* Gov. Br. at 27. In *Duarte-Ceri*, the Second Circuit explained that the phrase "before the child reaches his eighteenth birthday" would be "unambiguous" because "the entirety of [a date] was [the petitioner's birthday]—from 12:01 a.m. until 11:59 p.m." 630 F.2d at 90. In so doing, the Second Circuit made clear that the word "birthday" was responsible for eliminating ambiguity in an otherwise polysemic statute. Without that word, the Court is left to ponder the meaning of the term "age," which the *Duarte-Ceri* court properly found to be ambiguous. *Id.* at 88.

Because the phrase "had not reached the age of eighteen years" is ambiguous, USCIS could not have applied it to the facts of this case without first interpreting it. The record reflects that USCIS interpreted silently, with no reference to the "principles of statutory construction" articulated in *Duarte-Ceri*, which required it to consider whether its interpretation "operates to destroy an

36

important right," to "construe any lingering ambiguities in favor of the petitioner," and most importantly, to interpret 8 U.S.C. § 1101(b)(1)(B) in a way that "implements the underlying intention of our immigration laws [including the INA] regarding the preservation of the family unit." *Id.* at 90 (quoting H.R. Rep. No. 82-1365, at *1680 (1952)); *Chisholm*, 656 F.2d at 47; see *also INS v. Errico*, 385 U.S. 214, 220 (1966) ("Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce [the immigration laws] strictly"); *Cuthill,* 990 F.3d at 284 (noting, in analysis of related statutory provision, that Congress wished to "address[] the predicament of aliens, who, through no fault of their own, lose the opportunity to obtain an immediate relative visa" (quotations and citations omitted)); *Nwozuzu v. Holder*, 726 F.3d 323, 332 (2d Cir. 2013) (preserving family unity is the "prevailing purpose" of the INA). As a result, USCIS embraced an interpretation that destroys Qiu's statutory right to apply for a visa as an immediate relative, construes textual ambiguities against Qiu and Coniglio, and separates a family to satisfy a rule of bureaucratic convenience. *Cf. Duarte-Ceri*, 630 F.3d at 88 ("The legal fiction that a day is indivisible is a rule of convenience that is satisfactory only as long as it does not operate to destroy an important right").

Unable to show that USCIS complied with any of the foregoing requirements, the Government instead argues that *Duarte-Ceri* does not apply

because it involved a claim of citizenship. Gov. Br. at 28. This argument is
unconvincing. Although *Duarte-Ceri* did emphasize that citizenship is a "precious
right" that should not be taken away based upon "an ambiguity," the Court holds
that the principles it articulates apply by analogy to Qiu's situation. *Duarte-Ceri*,
630 F.3d at 88, 91. Like the petitioner in *Duarte-Ceri*, Qiu will be separated from
his mother and stepfather for the foreseeable future unless he is allowed to seek
entry as an immediate relative. *Id.* at 89; *see also* A.R. 62-64 (letter from Coniglio
attesting to his inability to visit Qiu in China because of his health conditions). And
he cannot seek entry without USCIS's approval. Like the right to derivative
citizenship, the "right to rejoin [one's] immediate family. . . ranks high among the
interests of the individual." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (internal
citations omitted). Administrative convenience and ambiguity do not justify
Government interference with it.

For the foregoing reasons, USCIS's interpretation contravenes the principles
of statutory construction clearly established in *Duarte-Ceri* and the broader
immigration law. It is likewise inconsistent with the statutory purpose of the INA
as articulated by the Second Circuit Court of Appeals. USCIS's interpretation and
analysis are therefore contrary to law. 5 U.S.C. § 706(2)(A).

B.     **Failure to Acknowledge Arguments**

Because USCIS's interpretation is substantively unlawful, the Court need not dwell on the question of whether it was also procedurally irregular. Nonetheless, the Court holds, in the alternative, that USCIS's failure to respond to Qiu and Coniglio's statutory arguments was arbitrary and capricious. Although this case involves a USCIS decision, the Second Circuit's analysis of the BIA's decision in *Zhao v. U.S. Department of Justice* is instructive. 265 F.3d 83 (2d Cir. 2001). In *Zhao*, the Second Circuit wrote, "by addressing the issue of petitioner's new evidence in only two sentences, the [BIA] created controversy and confusion. Failure to explain a decision adequately provides a ground for reversal." *Id.* at 96-7 (citing *Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir. 1992)). Here, USCIS created "controversy and confusion" by limiting its engagement with Qiu and Coniglio's arguments to the cursory statement that it "has reviewed the entire record." A.R. 2.

Moreover, as the preceding section makes clear, USCIS's failure to consider Qiu and Coniglio's statutory analysis caused it to overlook an important—and in fact, dispositive—aspect of the problem it faced and to rely upon an interpretation that runs counter to legislative intent. Thus, USCIS's failure to consider Qiu and Coniglio's arguments led it to "rel[y] on factors which Congress has not intended it to consider [and] entirely fail[] to consider an important aspect of the problem"

before it. *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Ins. Co.*, 463

U.S. 29, 43 (1983) (defining "arbitrary and capricious").

USCIS's failure to consider Qiu and Coniglio's statutory construction

arguments renders its decision arbitrary and capricious. 5 U.S.C. § 706(2)(A).

## CONCLUSION

For the foregoing reasons, the Government's motions to dismiss and for

summary judgment are **DENIED**.

Because the parties identify no factual disputes, the Court, *sua sponte*,

**ENTERS** partial judgment in favor of Qiu and Coniglio on their First and Second

Claims for Relief. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). The Court

**GRANTS** Qiu and Coniglio the following relief:[8]

---

[8] The Court's ordinary power to enter summary judgment *sua sponte* enables it to enter declaratory and injunctive judgments, provided the conditions for entry of summary judgment are met. *See Garanti Finansal Kiralama A.S. v. Aqua Marine Trading, Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) ("An action brought under the DJA is, in most respects, just like any other civil action. . . . The incidents of pleading, process, discovery, trial, and judgment are the same") (internal citations omitted); *cf. First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114-15 (2d Cir. 1999) (vacating *sua sponte* grant of declaratory judgment where the losing party had not had an opportunity to be heard); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 298-99 (2d Cir. 1999) (affirming *sua sponte* grant of injunctive relief along with entry of declaratory judgment). Based upon the Government's filing of a motion for summary judgment and its repeated assertions that this case may be decided on the Administrative Record—*see, e.g.*, Gov. Br. at 16-17, 23-25—the Court finds that the Government had an adequate opportunity to develop the record as well as notice that judgment could be entered against it. *See*

**First**, the Court **SETS ASIDE** USCIS's decision to revoke its prior approval of Qiu and Coniglio's Form I-130 petition pursuant to 5 U.S.C. § 706(2)(A).

**Second**, the Court **DECLARES** USCIS's interpretation of the phrase "had not reached the age of 18 years" in 8 U.S.C. § 1101(b)(1)(B) to be contrary to law and **ENJOINS** USCIS from adjudicating Qiu and Coniglio's petition based upon its unlawful interpretation.

**Third**, the Court **DECLARES** Qiu to be a "child" within the meaning of 8 U.S.C. § 1101(b)(1)(B).

**Fourth**, the Court **ORDERS** USCIS to reinstate the I-130 Petition unless the reversal of USCIS's revocation results in automatic reinstatement of the same.

The terms of the preceding Order do not bind the United States Department of

State, its Foreign Service, or any consular employee.[9]

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 17, 2021

---

*First Financial Ins., Co.*, 193 F.3d at 115 ("[When] a summary judgment motion has in fact been made. . . the parties are then on notice that the ultimate issues are before the court").

[9] My outstanding law clerk, Jacob Bennett, deserves recognition, under my supervision, for his meticulous research, cogent analysis, and his draft of this opinion.